**CLARA R. SMIT, ESQ.**
ATTORNEY AT LAW
190 HIGHWAY 18 N. SUITE 200
EAST BRUNSWICK, N.J. 08816
(732) 843-6600
ATTORNEY FOR THE PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER VEMAN | : |
| Plaintiff, | : |
| v. | : |
| KENNETH WILLIAMS, individually AND AS DIRECTOR OF ADULT EDUCATION AT MORRIS COUNTY SCHOOL OF TECHNOLOGY, JAMES ROGERS, individually AND AS SUPERINTENDENT OF MORRIS COUNTY SCHOOL OF TECHNOLOGY, MORRIS COUNTY SCHOOL OF TECHNOLOGY, MORRIS COUNTY VOCATIONAL SCHOOL DISTRICT, DR. THOMAS M. KANE, SUPERINTENDENT OF SCHOOLS, and MORRIS COUNTY | : Civil Action No.: |
| Defendants. | : COMPLAINT AND JURY DEMAND |

The Plaintiff, Alexander Veman, residing at 45 Shawnee Avenue, Township of Rockaway, County of Morris, and the State of New Jersey, by way of complaint says:

I

**JURISDICTION**

Jurisdiction of this court is invoked pursuant to N.J.S.A. 10:5-1 et. seq. and Title II, 42 U.S.C. §12131, *et seq.*, Americans With Disabilities Act, hereinafter referred to as the ADA as well as Title III of the ADA, 28 USCS Section 12181 *et seq.*, and Section 504 of the Rehabilitation Act. This suit is authorized and instituted pursuant to the exercise of the

police power of the State for the protection of the public safety, health, and morals and to promote the general welfare and fulfillment of the provision to the Constitution of the State of New Jersey and the United States of America guaranteeing civil rights.

## II

## PARTIES

1.  Plaintiff Alexander Veman is a resident of the Township of Rockaway, Morris County, State of New Jersey. He is deaf and communicates primarily through American Sign Language.  Plaintiff is a student at Morris County Vocational School District in the HVAC program.

2. Defendant, Kenneth Williams is the Director of Adult Education at Morris County School of Technology which is located at 400 East Main Street, Township of Denville, County of Morris, State of New Jersey.

3. Defendant, James Rogers is the Superintendent at Morris County School of Technology which is located at 400 East Main Street, Township of Denville, County of Morris, State of New Jersey.

4. Defendant, Morris County School of Technology is located at 400 East Main Street, Township of Denville, County of Morris, State of New Jersey.

5. Defendant, Morris County Vocational School District is located at 400 East Main Street, Township of Denville, County of Morris, State of New Jersey.

6. Defendant, Dr. Thomas M. Kane, Superintendent of Schools is located at Department of Education, 3rd Floor, 30 Schuyler Place, 3rd Floor, Town of Morristown, County of Morris, State of New Jersey.

7. Defendant, Morris County is located at Administrative & Records Building, Court Street, Town of Morristown, State of New Jersey.

### III
### NATURE OF CASE

This action is brought by Alexander Veman against the defendants alleging that plaintiff was unlawfully discriminated against by Defendants. The plaintiff experienced discrimination during his admission process and schooling in violation of his civil rights through Defendants' policies and practices of discrimination on the basis of disability.

This action claims that defendants violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., hereinafter NJLAD, Title II, 42 U.S.C. §12131, *et seq.* and Title III of the Americans with Disabilities Act, 28 USCS Section 12181 *et seq.*, Section 504 of the Rehabilitation Act, as well as other state and common law causes of action, intentional interference with plaintiff's beneficial relationships, and willful violation of the public policy of the State of New Jersey. In this action, Plaintiff suffered damages and now seeks declaratory and injunctive relief, and compensatory and punitive damages.

### FACTUAL ALLEGATIONS

1. One of the most important parts of the Americans with Disabilities Act is Title II. 42 U.S.C. Section 12181 et seq.

2. The New Jersey Law Against Discrimination specifically prohibits discrimination based upon disability under 10:5-12.

3. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance".

4. Defendants provide public accommodations within the meaning provided in each of the above laws.

5. As relevant to the present action, discrimination includes a failure to provide appropriate and reasonable auxiliary aids to plaintiff who has a hearing loss to ensure

effective communication. 28 C.F.R. Section 36.303(c).

6. On or about June 15, 2005 an initial meeting took place with Mr. Kenneth Williams, the Director of Adult Education, the plaintiff, Alexander Veman and his parents, Tamas & Gerardina Veman to discuss Alexander's interest in the Heating Ventilation Air Conditioning (HVAC) Program being offered at the Morris County School of Technology. A sign language interpreter was provided by the defendants for this meeting as plaintiff had requested one for his disability. Defendants at that time were aware of plaintiff's need for an American Sign Language interpreter to be present during his classes.

7. On or about July 13, 2005 a second meeting took place with the plaintiff Alexander Veman and Mr. Kenneth Williams. A sign language interpreter was also provided by the defendants for this meeting.  During these interviews, Mr. Kenneth Williams expressed reluctance on accepting plaintiff as a student and at a later date expressed his concern over the cost of a full-time interpreter. In July when plaintiff's mother went to drop off her son's high school diploma, Mr. Kenneth Williams questioned who was responsible to provide a sign language interpreter for plaintiff's classes as well as what she thought the cost would be.  He also questioned whether it was fair for the school district to pay for the interpreter and then told her the cost would run approximately $100,000. At that time, Mr. Williams also made disparaging comments about plaintiff's chances of finding employment in the future and questioned how he would communicate with the hearing world.

8. On July 8, 2005, plaintiff went to Division of Vocational Rehabilitation to discuss with Joan Wlazlowski, his DVR counselor, his intentions of pursuing the HVAC Program. DVR approved same upon the assumption that the defendants would provide communication accessibility  through sign language interpreters pursuant to state and federal law. Ms. Wlazlowski engaged in several discussions with Mr. Williams and Terry Schweon, Disability Coordinator for Morris County Schools and provided information about appropriate resources for interpreting services. She specifically advised Ms.

Schweon, who was collecting information for Mr. Williams, about the Division of the Deaf, state agency for the deaf as well as an individual interpreter, Benay Quadrel, whom she was aware of who was local and was available at that time.

9. On August 1, 2005, plaintiff was accepted as a student by defendants to enter into their HVAC Program, B.E.S.T. at the Morris County Vocational School District.

10. Despite this, on or about August 30, 2005, an e-mail was sent to the plaintiff by Mr. Williams telling him the school had been unable to obtain a sign language interpreter for the school opening. Mr. Williams also requested from plaintiff whether he knew of anyone who might be available to sign for him as the school apparently had no procedure in place to ensure effective communication with disabled deaf students. .

11. Thereafter the school placed ads in two local newspapers during three consecutive days the first week of September and one day the following week. The defendants ran these ads for a part-time sign language interpreter in these newspapers despite the fact that sign language interpreting is a very specialized profession requiring specific training, expertise and credentials and that plaintiff attended school full-time.

12. On September 6, 2005 plaintiff began school without any accommodation for his disability which continued until November 16, 2005. The plaintiff and his parents again reiterated his need for an interpreter and continued to do this for the next two months.

13. On September 12, 2005 plaintiff and his parents provided defendants with a list of interpreters from the Fair Lawn Deaf Program in an effort to assist defendants' search for an interpreter for plaintiff's classes. Despite the fact that the Division of the Deaf was listed on this list as well as many other interpreters, the defendants made no effort to contact them or any other sign language agency who specializes in sign language interpreting.

14. On or about September 29, 2005 plaintiff's father notified the office of Dr. Kane, Superintendent of Morris County Schools of defendants' negligence and failure to accommodate plaintiff for his disability.

15. On or about October 4, 2005 at DVR's insistence, a meeting took place with plaintiff, Ms. Wlazlowski, his case manager from the Division of Vocational Rehabilitation, plaintiff's instructor for his classes, John DeMarco, Mr. Williams and an interpreter due to plaintiff's repeated requests for a sign language interpreter which had still not been provided. During this meeting, Ms. Wlazlowski, the plaintiff and his teacher all stressed the importance of an interpreter being provided to plaintiff immediately so he could successfully complete the HVAC Program to Mr. Williams. They also discussed the concern they had that plaintiff not fall behind in his classes any more than he already had. Mr. Williams during this meeting stated that "plaintiff does not need a sign language interpreter as plaintiff was self-motivated and could attend classes just like Spanish people who do not speak English and do not get interpreters, do". Mr. Williams further stated "I protect this school and it's funds." The meeting abruptly ended with no resolution.

16. Shortly thereafter plaintiff's father contacted an attorney, Andrew Kimmel, who contacted the school through Mr. Williams. He was informed the school had advertised in the newspapers and therefore had made reasonable effort to accommodate plaintiff. Plaintiff's father, Tamas Veman was told by Mr. Rogers, the superintendent, the school would finally provide sign language interpreters and an I-Communication system if he would stop the attorney's actions. In reliance upon the superintendent's promises, Mr. Veman terminated his attorney's actions.

17. The I-communication system was actually recommended by Ms. Wlazlowski's DVR's manager, Howard Caroll, as he had seen a demonstration of it previously and felt it might be better than nothing until the interpreter was finally provided by the school. On October 22nd, 2006 DVR provided the equipment as the school had still failed to accommodate plaintiff's disability. Up until the October 4th meeting, DVR had thought the school had contacted all available resources to obtain an interpreter and was committed to providing an accommodation. When they realized there was a problem, they provided the

I-communicator as an emergency measure until an interpreter was obtained. However, there were problems with the system and everyone soon realized it was ineffective as a communication device. Therefore it was only attempted for two days. Plaintiff continued to attend school on a daily basis without effective communication as he had no choice as he wanted to graduate from the HVAC program.

18. On October 28th, Ms. Wlazlowski again contacted Mr. Williams via letter and copied Mr. Rogers. She again expressed her opinion that a sign language interpreter was absolutely necessary and told the school she was aware of an interpreter, Anna Terrazzino, who was available. She also stated that Mr. Williams must overcome his "reluctance" and hire the available interpreter as soon as possible to "make the classroom accessible for the deaf student".

19. On or about October 29, 2006 plaintiff failed his first exam as a direct result of the defendants' failure to accommodate his disability. Plaintiff had always obtained high honors in his elementary and secondary schools before, where he had been provided with effective communication. Therefore he was extremely upset and wrote a letter to Mr. Rogers with his mother's help, explaining his extreme distress regarding this exam and the defendants' continued failure to provide a sign language interpreter to him over the previous two months.

20. On or about November 3, 2005 plaintiff spoke with Mr. Rogers, Superintendent of Morris County School of Technology about the failure of the school to accommodate his disability. Mr. Rogers again promised that an interpreter would be obtained immediately. However once again no interpreter was provided for the next two weeks. Finally on November 16, 2005, nearly two and half months after plaintiff began his education with defendants, the school finally provided Anna Terrazzino. However, plaintiff was only provided with an interpreter from 8:00 A.M. to 12:00 P.M. by the school although the school did not end officially until 2:00 P.M., thereby precluding plaintiff from full

participation in the HVAC program. DVR then informed Ms. Terrazzino that they would pay for any hours required for the period of 12:00 to 2:00 p.m. which the school refused. Although plaintiff and Ms. Terrazzino both advised the school he would require full-time interpreting services beyond 12:00 P.M., the school continued to ignore the designated full-time program of 8:00 A.M.-2:00 P.M. Thus, the practical component of plaintiff's education was also denied.

21. Plaintiff has been wrongfully discriminated against during his education by defendants. Defendants' actions have been motivated by unlawful discrimination because of his disability.

22. Defendants' willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiff to suffer and continue to suffer mental and emotional pain and anguish.

## FIRST COUNT
## DEFENDANTS VIOLATED TITLE II OF THE
## AMERICANS WITH DISABILITIES ACT

23. Plaintiff's hearing loss substantially limits his major life activities of hearing and speaking and his ability to effectively communicate orally. Therefore, Plaintiff is an individual with a disability under Title II of the ADA. The Plaintiff, Alexander Veman met the eligibility requirements for Defendants' programs, services, and activities at all times material hereto. Thus, Plaintiff is a qualified individual with a disability and is entitled to the protections of the ADA under 42 U.S.C. §12131(1) and 28 C.F.R. §35.104.

24. Defendants violated Title II of the ADA in numerous ways, including discriminatory actions which occurred when they:

   (a)   Failed to maintain policies and procedures to ensure compliance with Title II

of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities;

(b) Failed to ensure that communications with Plaintiff were as effective as communications with non-disabled individuals;

(c) Failed to provide auxiliary aids and services, including qualified interpreters, and to modify policies and procedures to prevent discrimination against Plaintiff;

(d) Excluded Plaintiff from programs, services and activities of the public entity and denied Plaintiff the benefit of these programs, services and activities due to his disability.

25. Plaintiff suffered severe emotional distress and damages in the past, and continues to suffer emotional distress and damages due to Defendants' violations of Title II of the ADA.

## SECOND COUNT
## DEFENDANTS VIOLATED TITLE III OF THE
## AMERICANS WITH DISABILITIES ACT

26. Plaintiff's hearing loss substantially limits his major life activities, including his ability to effectively communicate. Therefore, Plaintiff is an individual with a disability under Title III of the ADA. Plaintiff meets the essential eligibility requirements for Defendants' programs, services, and activities at all times material hereto. Thus, Plaintiff is a qualified individual with a disability and is entitled to the protections of the ADA under 29 USCS Section 794, et seq.

27. Defendants violated Title III of the ADA in numerous ways, including discriminatory actions which occurred when they:

(a) Failed to maintain policies and procedures to ensure compliance with Title III

of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities;

(b)  Failed to ensure that communications with Plaintiff were as effective as communications with non-disabled individuals;

(c)  Failed to provide auxiliary aids and services, including qualified interpreters, and to modify policies and procedures to prevent discrimination against Plaintiff;

(d)  Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as an individual with a disability under the ADA;

(e)  Excluded Plaintiff from services of the public entity and denied Plaintiff the benefit of these services due to his disability.

28. Plaintiff suffered severe emotional distress and damages in the past, and continues to suffer emotional distress and damages due to Defendants' violations of Title III of the ADA.

**THIRD COUNT**

**DEFENDANTS VIOLATED SECTION 504 OF THE**

**REHABILITATION ACT OF 1973**

29. Plaintiff Alexander Veman is deaf and his disability substantially limits his major life activities, including hearing, speaking and his ability to effectively communicate with others who do not know sign language. Therefore, Plaintiff is an individual with a disability under Section 504. Plaintiff is otherwise qualified under Section 504 because he met the eligibility requirements for Defendants' programs, services, and activities at all times material hereto. Defendants are also recipients of federal financial assistance.

30. Defendants' policies, practices and procedures, particularly the actions and

omissions described above, violated the Plaintiff's rights under Section 504 by discriminating on the basis of disability.

31. Additionally, Defendants also denied Plaintiff meaningful access to programs, services, and activities, which they made available to non-disabled participants.

32. Defendants violated Plaintiff's rights through repeated refusals to reasonably accommodate Plaintiff with appropriate auxiliary aids and services or to modify policies and procedures to prevent discrimination.

33. Plaintiff suffered severe emotional distress and damages in the past, and continues to suffer emotional distress and damages due to Defendants' violations of Section 504.

## THIRD COUNT
## DEFENDANTS VIOLATED THE NEW JERSEY
## LAW AGAINST DISCRIMINATION

34. Defendants' conduct is in violation of the N.J.S.A. 10:5-1, et seq.

## FOURTH COUNT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35. As a result of Defendants' acts and omissions described above, Plaintiff was caused to suffer great emotional stress.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendants, jointly and severally for the following:

36. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, Title II and Title III of the Americans with Disabilities Act, and the New Jersey Law Against Discrimination.

37. Permanently enjoin Defendants from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from, Defendants' programs, services, and activities, or which deny Plaintiff effective communication with Defendants. Enter a permanent injunction ordering Defendants:

  A. To cease discrimination against Plaintiff and other deaf or hard of hearing individuals;

  B. To promulgate and comply with policies and procedures to ensure that Defendants and its staff do not discriminate against individuals who are deaf or hard of hearing;

  C. To promulgate and comply with procedures to ensure that Defendants will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services, programs and activities offered by Defendants;

  D. To promulgate and comply with procedures to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters and other communication services to ensure effective communication with deaf or hard of hearing persons.

38. Award compensatory and punitive damages;

39.  Award reasonable costs and attorneys' fees; and

40.  Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

41.  Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

                                      Respectfully submitted,

                                      /S/ Clara R. Smit, Esq.
                                      CLARA R. SMIT, ESQ.
                                      Attorney for Plaintiff

Dated:       June 26, 2006

## CERTIFICATION

　　　　Pursuant to Rule 4:5-1, I, Clara R. Smit, certify that I am a member of the firm of Clara R. Smit, attorney for the Plaintiff stated herein. To my information and belief, the matter in controversy is not the subject of any other action pending in any other Court, or of a pending arbitration proceeding and no other action or arbitration proceeding is being contemplated. At this time, the Plaintiff knows of no other party who should be joined in this action.

　　　　　　　　　　　　　　　　　　/S/Clara R. Smit, Esq.
　　　　　　　　　　　　　　　　　　Clara R. Smit, Esq.
　　　　　　　　　　　　　　　　　　Attorney for Plaintiff

Dated:　　　June 26, 2006